BLANK ROME LLP
Gregory M. Bordo (SBN 156147)
GBordo@BlankRome.com
Christopher J. Petersen (SBN 251439)
CJPetersen@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA  90067
Telephone:   424.239.3400
Facsimile:    424.239.3434

Attorneys for Plaintiff
GLOBAL TOBACCO, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| GLOBAL TOBACCO, LLC, a Texas limited liability company,<br><br>                    Plaintiff,<br><br>        vs.<br><br>R.K. CO., INC., a Nevada Corporation, dba CIGAR CARTEL and DOES 1 through 10.<br><br>                    Defendants. | Case No. 2:15-CV-05227<br><br>**COMPLAINT FOR:**<br><br>**(1) FEDERAL TRADE DRESS INFRINGEMENT; VIOLATION OF THE LANHAM ACT § 43(A)**<br>**(2) UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200;**<br>**(3) CALIFORNIA COMMON LAW UNFAIR COMPETITION**<br>**(4) INJUNCTIVE RELIEF.**<br><br>**[DEMAND FOR JURY TRIAL]** |

146061.00601/101205493v.1

GLOBAL TOBACCO, LLC hereby respectfully alleges as follows:

**THE PARTIES**

1.      Plaintiff GLOBAL TOBACCO, LLC ("GLOBAL") is a Texas limited liability company with its principal place of business located at 2861 Congressman Ln., Suite 300, Dallas, Texas 75220.  GLOBAL produces, among other things, Clipper Cigars marketed and sold to the general public.

2.      GLOBAL is informed and believes and, based thereon, alleges that Defendant R.K. Co., Inc.'s principal place of business is located at 8826 Bradley Avenue, Sun Valley, CA 91352.  GLOBAL is also informed that R.K. Co., Inc., at all times referenced herein, was and is doing business as "Cigar Cartel".  R.K. Co., Inc. is referred to herein as "CIGAR CARTEL."

3.      GLOBAL is not aware of the true names and capacities of Defendants identified herein as DOES 1 through 10, inclusive, and therefore fictitiously names said Defendants.  GLOBAL will amend this Complaint to allege the true names and capacities of these fictitiously named Defendants when their identities are ascertained.

4.      GLOBAL is informed and believes and, based thereon, alleges that Defendants CIGAR CARTEL and each of the fictitiously named DOE Defendants (collectively, "Defendants") were in some manner responsible for the acts alleged herein and the harm, losses and damages suffered by GLOBAL as alleged hereinafter.  GLOBAL is also informed and believes and, based thereon, alleges that while participating in such acts, each Defendant was the agent, principal, and/or alter ego of other Defendants, and was acting in the course and scope of such agency and/or acted with permission, consent, authorization or ratification of the other Defendants.

5.      As described further below, GLOBAL is informed and believes and, based thereon, alleges that Defendants conduct business and distribute their products in California, within this Court's jurisdiction, in Southern California and the greater Los Angeles area.

## JURISDICTION AND VENUE

6.     This is an action for preliminary and permanent injunctive relief and for damages arising from Defendant's infringement of GLOBAL's trade dress, for Defendant's violation of 15 U.S.C. § 1125(a), "passing off" and unfair competition under California statutory and common law.

7.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338.

8.     GLOBAL is informed and believes and, based thereon, alleges that venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a), 1391(b) and 1391(c) because CIGAR CARTEL is subject to personal jurisdiction in this District, and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

9.     This action arises out of a premediated and intentional attempt by CIGAR CARTEL to pass off its goods as those of GLOBAL.  As distributor of Clipper Cigars, CIGAR CARTEL became fully familiar with GLOBAL's sales channels for Clipper Cigars, as well as pricing information and other market factors.   Using this information.   CIGAR CARTEL developed its own cigar product and began selling the product in packaging virtually identical to the trade dress used by GLOBAL for its Clipper Cigars.  Making its conduct exceptionally galling CIGAR CARTEL engaged in its conspiracy to unfairly compete with GLOBAL while he was simultaneously and actively distributing Clipper Cigars and enjoying premium pricing and other benefits from GLOBAL.

### The Clipper Trade Dress

10.  GLOBAL began producing and selling the product known as Clipper Cigars in January 2007.  Clipper Cigars are filtered cigars sold by GLOBAL in eight different flavors: Full Flavor; Menthol; Grape; Strawberry; Peach; Vanilla; Cherry; and, Lights.

11.  GLOBAL tobacco has successfully marketed Clipper Cigars for many years in the United States, including California.

12.  GLOBAL is the owner of U.S. Registration No. 3191381 for the CLIPPER mark in connection with the sale of cigars as well as U.S. Registration No. 4237208 for a logo comprised of a clipper ship also in connection with the sale of cigars. These Registrations with United States Patent and Trademark Office are collectively referred to herein as the CLIPPER MARKS.  True and correct copies of the registrations are attached hereto respectively as Exhibits "1" and "2".

13.  For many years, GLOBAL has incorporated the CLIPPER MARKS into its packaging design for Clipper Cigars to create a uniquely recognizable and inherently distinctive presentation and marketing of CLIPPER CIGARS (the "Clipper Trade Dress").

14.  The Clipper Trade Dress consists of a box package design bearing a colored background with a faded white center circle containing an all-black image of a clipper ship.  The name "CLIPPER" is positioned directly above the clipper ship design and set out in a distinctive font.  The Clipper Trade Dress is not functional in that the Clipper Trade Dress is not part of a function served and derives its primary value from identification of the product and its manufacturer.  True and correct depictions of the Clipper Trade Dress are set out below and are collectively attached hereto as Exhibit "3".

 

15.   The Clipper Trade Dress is designed in part to attract the attention of consumers viewing tobacco products on store shelves and in store displays. Moreover, GLOBAL has built its Clipper Cigar business around the Clipper Trade Dress.   GLOBAL has expended considerable resources to create and develop its unique Clipper Trade Dress and as a result of GLOBAL's marketing and promotion of and around the Clipper Trade Dress, Clipper Cigars are recognized as high quality products emanating from, or being associated with, GLOBAL.

16.   In addition to being inherently distinctive, in light of GLOBAL's many years of continuously using the Clipper Trade Dress, consumers have come to associate the Clipper Trade Dress with GLOBAL and GLOBAL has developed a substantial amount of goodwill in the Clipper Trade Dress.   The Clipper Trade Dress has also acquired secondary meaning through, among other things GLOBAL's advertising and promotional efforts.   The Clipper Trade Dress acquired secondary meaning before Cigar Cartel commenced its infringement of the Clipper Trade Dress as alleged herein.

**Global and Cigar Cartel Business Relationship**

17.   In November 2011, years after GLOBAL commenced extensive sales of Clipper Cigars, using the Clipper Trade Dress, CIGAR CARTEL became a distributor of Clipper Cigars in the Southern California Region.   In so doing, Cigar Cartel acquired from GLOBAL Clipper Cigars for re-sale and thereby developed knowledge of the types and identities of retailers selling Clipper Cigars (its 'sales channels') and, more specifically, therefore, the nature (including, socio-economic status) of Clipper Cigars purchasers.

18.   As a result of what was a successful years-long business relationship between the parties, they developed a relationship of trust.   Based thereon, GLOBAL provided to CIGAR CARTEL premium pricing.   GLOBAL also directed inquiries from wholesale customers to CIGAR CARTEL and, in doing so, gave prospective

1   wholesale customers only the list prices for the products knowing that CIGAR
2   CARTEL could provide said customers with better pricing.

3   **CIGAR CARTEL's Clipper Trade Dress Infringement**

4       19.   GLOBAL is informed and believes and, based thereon, alleges that on or
5   about February 2015, CIGAR CARTEL commenced the sale of cigars (the "Cartel
6   Cigars") having the same general size and shape of Clipper Cigars.  In fact, Cigar
7   Cartel has, since February 2015 and to the present day, sold *its* cigars in the same
8   eight flavors of Clipper Cigars.

9       20.   In furtherance of its efforts to capitalize, misappropriate and trade on
10  GLOBAL's goodwill, Cartel Cigars are packaged by CIGAR CARTEL in packages
11  (the "Infringing Packages") virtually identical to the Clipper Trade Dress.  The Cartel
12  Packaging is essentially the same as the Clipper Trade Dress using a colored
13  background with a faded white circle containing an all-black depiction of a human
14  profile.  In addition, like the Clipper Trade Dress, the name of the product "CARTEL"
15  is placed at the top of the package in the identical font used to display the word
16  "CLIPPER" in the Clipper Trade Dress.

17      21.   GLOBAL is informed and believes and, based thereon, alleges that
18  Defendants' product is sold through the same sales channels as are Clipper Cigars,
19  sales channels that became known to CIGAR CARTEL as a result of its years-long
20  relationship with GLOBAL.

21      22.   GLOBAL is further informed and believes and, based thereon, alleges that
22  in furtherance of its conspiracy to defraud the public and to misappropriate
23  GLOBAL's goodwill derived from the Clipper Trade Dress,  CIGAR CARTEL'S
24  products marketed and sold using the infringing Cartel Trade Dress are sold by
25  CIGAR CARTEL for $.50 less per package than GLOBAL's Clipper Cigars.

26

27

28

23.   True and correct depictions of CIGAR CARTEL's trade dress are set out below and are collectively attached hereto as Exhibit "4".

 

24.   True and correct copies of photographs taken of the Clipper Trade Dress and the infringing Cartel Packages alongside one another are set out below and are collectively attached hereto as Exhibit "5".



 

**COMPLAINT**

25. The Cartel Trade Dress, and its obvious similarity to the Clipper Trade Dress, are such that prospective purchasers or consumers of the goods Defendants and the goods of GLOBAL are likely to be confused as to source.

26. Defendants' use in commerce of the infringing Cartel Trade Dress in connection with the sale of Cartel Cigars is causing and is likely to cause confusion in the minds of consumers causing them to be deceived and mistaken with respect to the origin and source of the products.

27. GLOBAL is informed and believes and, based thereon, alleges that Defendants deliberately misappropriated GLOBAL's Clipper Trade Dress in order to trade upon the goodwill which GLOBAL has cultivated in connection therewith, and to lead consumers to believe that GLOBAL is the source of such products which in fact do not originate from GLOBAL and are not produced by or affiliated with GLOBAL.

28. Defendants knowingly and intentionally misappropriated GLOBAL's Clipper Trade Dress with oppression, fraud and malice.

## COUNT I

## FALSE DESIGNATION OF ORIGIN

29. GLOBAL hereby repeats the allegations set forth in Paragraphs 1 through 28, hereinabove and incorporates same as though fully set forth herein.

30. As alleged hereinabove, the Clipper Trade Dress acquired secondary meaning prior to Defendants' introduction of the Cartel Packaging. Moreover, Defendants' intentional use of the infringing Cartel Mark, doing so in concert with pricing below that of Clipper Cigars and thereby 'passing off' its goods as though they were GLOBAL's is prima facie evidence of the secondary meaning of the Clipper Trade Dress.

31. Defendants' use of the infringing Cartel Trade Dress constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a) which provides that:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) In commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

32.   Defendants' conduct is likely to confuse, mislead and deceive Defendants' customers, purchasers and members of the public as to the origin of Defendants' merchandise or cause said persons to believe that Defendants merchandise has been sponsored, approved, authorized   or licensed by GLOBAL or are in some way affiliated or connected with GLOBAL, all in violation of 15 U.S.C. § 1225(a).

33.   As alleged hereinabove, GLOBAL is informed and believes and, based thereon, alleges that Defendants' conduct was and is willful and intentional.

34.   By reason of Defendants' conduct, GLOBAL has been damaged in an amount to be determined at trial and has suffered and will continue to suffer irreparable injury for which GLOBAL has no adequate remedy at law.  GLOBAL is, therefore, entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

35.   The conduct of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake and deception.

36.   Because of the willful nature of Defendants' acts, GLOBAL is entitled to a trebling of its damages pursuant to 15 U.S.C. § 1117.

37.   The nature and manner of Defendants' intentional and premeditated conduct including CIGAR CARTEL's use of its business relationship and position of trust with GLOBAL to enable its infringement, make this an exceptional case warranting an award to GLOBAL of its attorney's fees incurred in prosecuting its claims alleged herein pursuant to 15 U.S.C. § 1117.

## COUNT II

### COMMON LAW TRADE DRESS INFRINGEMENT

38.   GLOBAL hereby repeats the allegations set forth in Paragraphs 1 through 28, hereinabove and incorporates same as though fully set forth herein.

39.   Defendants' conduct as alleged herein constitutes trade dress infringement under the laws of the State of California.

40.   GLOBAL is informed and believes and, based thereon alleges, that Defendants' conduct was and is willful and intentional.

41.   By reason of Defendants' conduct, GLOBAL has been damaged in an amount to be determined at trial and has suffered and will continue to suffer irreparable injury for which GLOBAL has no adequate remedy at law.

## COUNT III

### Unfair Competition and Unfair Business Practices Pursuant to Cal. Bus. & Prof. Code § 17200, 17500 et seq.

42.   GLOBAL hereby repeats the allegations set forth in Paragraphs 1 through 28, hereinabove and incorporates same as though fully set forth herein.

43.   Defendants' willful, knowing and an unauthorized infringement of GLOBAL's Clipper Trade Dress, causing confusion as to the source of the goods sold by Defendants constitute untrue and misleading statements and constitute an unlawful misappropriation of GLOBAL's rights as described herein.

44.   By marketing and selling its goods using an infringing trade dress, Defendants are in violation of GLOBAL's proprietary rights.  Their conduct thereby constitutes unlawful, unfair, deceptive, and/or fraudulent trade practices and unfair

competition in violation of California Business & Professions Code sections 17200 and 17500 et seq.   The predicate acts comprising Defendants' unlawful, unfair, deceptive, and/or fraudulent trade practices or acts include, without limitation, the violations of law alleged herein.

45.   As a direct and proximate result of Defendants' wrongful conduct, GLOBAL has suffered injury in fact, including the erosion of its goodwill and actual confusion between CIGAR CARTEL's' products and GLOBAL's.

46.   Pursuant to California Business & Professions Code § 17203, Defendants are required to disgorge and restore to GLOBAL all profits and property acquired by Defendants' unfair competition with GLOBAL.

47.   Pursuant to California Business & Professions Code § 17203, GLOBAL is entitled to a preliminary and permanent injunction restraining Defendants, their officers, agents, employees, distributors and all persons acting in concert with them, from engaging in further such unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFOR, GLOBAL prays for judgment against Defendants, and each of them, as follows:

1.   That the Court enter judgment finding that Defendants have violated 15 U.S.C. § 1114, 15 U.S.C. § 1125(a) and the common law, has infringed GLOBAL's Clipper Trade Dress, has unfairly competed with GLOBAL by falsely designating the origin of CIGAR CARTEL's products, and has engaged in other acts of unfair competition;

2.   Ordering that Defendants and their officers, agents, servants, employees and attorneys and all persons in active concert or participation with the foregoing, be enjoined preliminarily during the pendency of this action and permanently thereafter from:

   a. Offering for sale, soliciting sales, advertising, or selling any products in any medium under any mark, name, symbol, logo, or other indicia

**COMPLAINT**

1   that incorporates or is confusingly similar to GLOBAL's Clipper Trade
2   Dress;

3   b. Offering for sale, soliciting sales, advertising, or selling any products
4   in any medium under any mark, name, symbol, logo, or other indicia
5   which is likely to cause confusion or to cause mistake or to deceive
6   persons into the erroneous belief that Defendant's products originate
7   from GLOBAL, or that Defendants or their agents are authorized by
8   GLOBAL or are endorsed by GLOBAL or are sponsored by
9   GLOBAL, or are connected in some way with GLOBAL;

10  c. Using false designations or from engaging in any act or series of acts
11  which, either alone or in combination, constitutes deceptive or unfair
12  methods of competition with GLOBAL and from otherwise interfering
13  with or injuring the goodwill associated with GLOBAL's Clipper
14  Trade Dress;

15  3.  Ordering that Defendant deliver to GLOBAL for destruction all infringing
16  packaging and any infringing promotional material and advertisements;

17  4.  Awarding damages to GLOBAL according to proof at the time of trial
18  herein, and an accounting of Defendants' profits generated as a result of
19  Defendants' aforesaid acts of infringement in violation of GLOBAL's
20  rights under the Lanham Act;

21  5.  Awarding damages of three times the amount of compensatory damages
22  and profits pursuant to 15 U.S.C. § 1117 and punitive damages in an
23  amount to be proven at trial;

24  6.  Awarding GLOBAL's its attorneys' fees and costs incurred in prosecuting
25  this action; and,

26  7.  Such other and further relief as the Court may find just and proper.

27  **DEMAND FOR JURY TRIAL**

28  Plaintiff hereby demands a trial by jury.

1    DATED:  July 10, 2015                    BLANK ROME LLP

2

3

4                                            By:  */s/ Gregory M. Bordo*
                                                  Gregory M. Bordo
5                                                 Christopher J. Petersen
6                                            Attorneys for Plaintiff
                                             GLOBAL TOBACCO, LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9 and 17

**United States Patent and Trademark Office**

Reg. No. 3,191,381

Registered Jan. 2, 2007

## TRADEMARK
### PRINCIPAL REGISTER

# Clipper

PATRIOT TOBACCO COMPANY (TEXAS CORPORATION)
1210-A DUNCAN STREET
DENTON, TX 76205

FOR: CIGARS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 5-18-2005; IN COMMERCE 5-18-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-632,588, FILED 5-18-2005.

HOWARD B. LEVINE, EXAMINING ATTORNEY

# EXHIBIT 2

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,237,208**

**Registered Nov. 6, 2012**

**Int. Cl.: 34**

**TRADEMARK**

**PRINCIPAL REGISTER**

GLOBAL TOBACCO, LLC (TEXAS LIMITED LIABILITY COMPANY)
2861 CONGRESSMAN LANE
DALLAS, TX 76053

FOR: CIGARS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 5-18-2005; IN COMMERCE 5-18-2005.

THE MARK CONSISTS OF THE DESIGN OF A CLIPPER SHIP.

SER. NO. 85-584,129, FILED 3-29-2012.

DORITT L. CARROLL, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION

WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years***
**What and When to File:**

*First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k.  If the declaration is
accepted, the registration will continue in force for the remainder of the ten-year period, calculated
from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
federal court.

*Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an
Application for Renewal between the 9th and 10th years after the registration date.*
*See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date).  The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the
USPTO website for further information.  With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

# EXHIBIT 3











# EXHIBIT 4







# EXHIBIT 5











